IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN E. CORREA-ZAYAS,<br><br>Plaintiff,<br><br>v.<br><br>JAIME ESTRADA-FEBO, ET AL.<br><br>Defendants. | CIV. NO.: 15-1585 (SCC) |

**OMNIBUS OPINION AND ORDER**

Plaintiff Juan E. Correa-Zayas, a resident of California, was visiting his family in Puerto Rico when he was bitten by a dog on his face and lower jaw. The incident occurred while Correa was walking his family dog, Boinayer at the Vistas de Rio Grande residential community in Rio Grande, Puerto Rico. There, he ran into "PEM", a teenager who was walking BJ, her family dog. BJ allegedly ran loose and attacked Correa and Boinayer, causing Correa to suffer injuries. Correa filed suit against PEM's parents, Jaime Estrada-Febo and Luisa

Miranda-Menchaca, and her stepfather, Jonathan López, under several Puerto Rico statutes.

Now pending before the Court are Correa's Motion for Partial Summary Judgment and Estrada's Cross Motion for Summary Judgment.

## I. Background

The Complaint seeks relief against Estrada, Miranda and Lopez on the basis of three articles of the Puerto Rico Civil Code: the general tort statute, found in Article 1802, 31 L.P.R.A. § 5141; the vicarious liability provision of Article 1803, 31 L.P.R.A. § 5142; and the absolute liability provision in Article 1805, 31 L.P.R.A. § 5144. Plaintiff also raised claims against the insurance companies that issued policies covering the events.

The claims based on Articles 1802 and 1805 were asserted against all three individual defendants, whereas the Article 1803 vicarious parental claims were asserted as to both parents, and then subsequently dismissed with prejudice as to Estrada, who is not the custodial parent. *See* Docket No. 24.

Correa's Motion for Partial Summary Judgment is premised on the absolute liability provision of Article 1805. Docket No. 55. Co-defendants opposed and filed a cross-motion for summary judgment. Docket No. 67-1. They alleged that partial summary judgment should be entered in favor of Estrada because he was not the possessor of the dog at the time of the incident.

Plaintiff replied to defendants' opposition to his motion for summary judgment, and answered Estrada's Motion for Partial Summary Judgment. Docket No. 72. Defendants surreplied. Docket No. 81.

**II. Factual Findings**

The following factual findings are taken from the parties' statements of uncontested facts ("SUF") and supporting documentation. In accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. *See* Local Rule 56(e). The court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006);

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

The court finds that the following facts are uncontested:

1. "PEM" is the child of defendants Jaime Estrada-Febo and Luisa Miranda Menchaca. *See* Exhibit 1, Docket No. 55-2, at pg. 13, lines 14-15, 18-20.

2. Estrada-Febo and Miranda-Menchaca, who never married, lived together for many years. *See* Exhibit 2, Docket No. 55-2, at pg. 11, lines 21, to pg. 12, line 5.

3. When PEM was a young child, Estrada-Febo bought a house in the Vistas de Río Grande Urbanization. *See* Exhibit 2, Estrada Deposition, Docket No. 55-2, at pg. 21, lines 7-9; Exhibit 3, Miranda Deposition, Docket No. 55-2, at pg. 11, lines 5-15; pg. 14, lines 23 to pg. 15, line 4.[1]

4. When PEM was approximately five years old, Miranda-Menchaca and Estrada-Febo bought her a Labrador dog as a birthday present. Docket No. 55-2, Exhibit 3, Miranda Deposition, Docket No. 55-2, pg. 15, lines 19-25.

---

1 Defendants admitted Statements 1-3.

5. In 2004, Estrada-Febo registered the dog with the American Pet Registry. *See* Docket No. 55-2, Exhibit 5, Certificate of Registration, Docket No. 55-2.

6. In the Certificate, the dog appears registered as "Estrada's BJ". Exhibit 5, Certificate of Registration, Docket No. 55-2.

7. "Jaime Estrada" was listed as the owner of the dog in the Certificate of Registration. *Id*.

8. BJ received a Certificate of Pedigree as a Labrador Retriever. *See* Exhibit 6, Certificate of Pedigree, Docket No. 55-2.

9. "Jaime Estrada" was listed as the owner of the dog in the Certificate of Pedigree. *Id*.

10. When PEM was approximately 14 years old, Estrada-Febo and Miranda-Menchaca separated and Estrada-Febo moved out of the house in Vistas de Río Grande. Exhibit 2, Estrada Deposition, at pg. 16, line 20, to pg. 17, line 7.[2]

11. Miranda continued to live in the house with PEM. Exhibit 2, Estrada Deposition, at pg. 8, lines 3-8.

---

2  Defendants admitted the statements contained in Paragraphs 10-17.

12. After moving from the house in Vistas de Río Grande, Estrada went to the house daily during school days to pick up PEM and take her to school. Exhibit 2, Estrada Deposition, at pg. 16, lines 3-9.

13. Jonathan López met Miranda-Menchaca in approximately 2011. *See* Exhibit 4, López Deposition, Docket No. 55-2, at pg. 9, lines 11-12.

14. López moved to Puerto Rico in approximately August, September or October of 2012, to move in with Miranda. *See* Exhibit 4, López Deposition, at pg. 9, line 17, pg. 10, line 9.

15. López and Miranda wed on October 25, 2012. Exhibit 4, López Deposition, at pg. 5, lines 2-3.

16. At the time of the incident, Estrada-Febo resided at Borinquen Gardens. Exhibit 2, Estrada Deposition, pg. 10, lines 19-20 and 24-25.

17. Estrada continues to be the owner of the house in Vistas de Río Grande. Exhibit 2, Estrada Deposition, at pg. 8, lines 20-21.

18. At approximately 8:00 p.m. on October 14, 2014, PEM was walking BJ using a leash. *See* Docket No. 11, Answer to Complaint, at ¶ 18, pg. 3.

19. At that time, Correa left his family's home in Vistas de Río Grande to walk his dog, Boinayer, a Great Dane. *See* Docket No. 55-2 at pg. 40-47, Exhibit 8, Excerpts from Plaintiff's Answer to Interrogatories and Request for Production, at pg. 4, ¶ 4.[3]

20. The Great Dane was in the middle of Nogal Street, where PEM lived. *See* Exhibit 1, PEM Depo, at pg. 110, lines 7-11.

21. PEM had trouble controlling the Labrador, BJ, who she described as "being hyperactive." BJ was pulling her in the direction of Boinayer, and she was trying to pull him back. *See* Docket No. 55-2, Exhibit 1, PEM Depo, pg. 109-, lines 10-21; pg. 110, lines 7 to pg. 111, line 1.

22. PEM lost control of BJ. The leash slipped out of her hands, and the dog ran away from her. Exhibit 1, PEM Deposition, page 110, line 17 to page 111, line 1; page 111, line 17 to line 21.

23. The Labrador ran into the street in the direction of the Boinayer. *See* Exhibit 8, Plaintiff's Interrogatory Answers, at page 5.

---

3 Defendants admitted the statements in paragraph 19-23.

24. PEM began running after the dog, trying to grab him, but when she saw the Labrador and the Great Dane together, she was afraid and simply stopped, becoming totally paralyzed. Exhibit 1, PEM Deposition, page 111, line 22 to page 112, line 3; page 117, lines 1-12; Exhibit 8, Plaintiff's Answers to Interrogatories, page 7, last paragraph, to page 8, first line.

25. PEM was frightened because the Great Dane was "so, so, so, so big", that she did not try to locate BJ's leash on the ground to pull him back in her direction. *See* Exhibit 1, PEM Deposition, page 117, lines 7-12.

26. Both dogs were growling at each other. Exhibit 1, PEM Deposition, page 112, lines 1-13.

27. As BJ approached them, Correa pulled back on Boinayer's leash. At that point, he was in control of his dog. Exhibit 8, Plaintiff's Answer to Interrogatories, page 6.

28. By pulling back on the leash, Mr. Correa was attempting to avoid contact between the dogs, to separate them, and to give PEM the opportunity to control BJ. Exhibit 8, Plaintiff's Answer to

Interrogatories, page 6.

29. He shouted to PEM to "aguanta el perro" ("grab your dog" or "hold back your dog"). PEM did not regain control of the Labrador. Exhibit 8, Plaintiff's Interrogatory Answers, page 6, first paragraph.

30. Correa continued to pull back on the leash, but he was pulling in one direction and Boiyaner in the other, and the leash/collar broke. Exhibit 8, Plaintiff's Interrogatory Answers, page 6, last full paragraph.

31. At some point, the dogs started biting each other. Exhibit 8, Plaintiff's Interrogatory Answers, page 6, third paragraph, and page 7, second to last paragraph; Docket No. 67-5, Exhibit B, PEM's deposition, pg. 133, lines 4-10.

32. Mr. Correa suffered injuries as a result of the incident.[4]

33. From 2012 onward, and at the time of the incident, BJ was not living with Mr. Estrada Febo. *See* Docket No. 67-4, Exhibit A, Estrada Deposition, page 90, lines 19-20, page 91, lines 16-17, page 92, lines 14-16, page 93, lines 4-6.

---

4  The parties agree to this fact.

34. From 2012 onward, and at the time of the incident, Mr. Estrada was not the person who bought BJ's food, fed him, walked him, or bathed him. *See* Docket No. 67-4, Exhibit A, Estrada Deposition, page 91, lines 4-23, and page 92, lines 2-4, 17-22.

35. From 2012 onward, and at the time of the incident, Mr. Estrada was not the person who took BJ to the veterinary. *See* Docket No. 67-4, Exhibit A, Estrada Deposition, page 91, lines 11-13, and 24-25, and page 92, line 1, lines 23-25.

### III. Analysis

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff argues that Puerto Rico provides for absolute liability for injuries caused by a dog through Article 1805, and seeks partial judgment as a matter of law on the issue. Article 1805 provides as follows:

> [t]he possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray. This liability shall cease only in case the damage should arise from force majeure or from fault of the person who may have

suffered it.[5]

P.R. Laws Ann. tit. 31, § 5144 (1990).

This responsibility continues even when the animal escapes or is lost. *Serrano v. Lopez*, 79 D.P.R. 979, 983 (1957)(citing *Ferrer v. Rivera*, 56 D.P.R. 504 (1940)). In fact, it only ceases in the two instances detailed in the statute, when the injury is attributable to *force majeure*, or when it is caused by the fault of the injured party. *Id.*

The parties do not contest that the first exception is not present here, but disagree on the applicability of the second exception, the "culpa" exoneration clause. Anticipating that defendants would argue for its applicability, plaintiff sought to distinguish the concept of "culpa" in the context of Article 1805, from ordinary negligence or comparative negligence. Correa posited that the Article 1805 "culpa" turns on the

---

5 The original text of the statute in Spanish reads: "El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

origin of the chain of events, irrespective of whether another party's intervention "once the incident began" was erroneous. *See* Docket No. 55 at pg. 7.

Following those principles and recognizing that there are factual controversies regarding his efforts to stop the dogfight, Correa explained that those factual discrepancies are "irrelevant to the issue of absolute liability"[6] since he did not provoke the incident. Therefore, his intervention in the sequence of events once BJ had already approached them is no defense to the absolute responsibility found in Article 1805.

We take issue with such a restrictive view of the concept of "fault" as defined in the Puerto Rico Civil Code and interpreted in Puerto Rico Supreme Court case law,[7] but our

---

6 *See* Docket No. 55, page 7, n. 5.
7 Our hesitation to follow plaintiff's reasoning rests, partly, on the case of *Beltran v. Sucn. J. Serralles*, 70 D.P.R. 86 (1949), in which the Puerto Rico Supreme Court expressed that the "culpa" in Article 1805 means the same thing as it does in § 5141, where ordinary negligence is defined. Moreover, in *Rivera-Pagán v. López-Santiago*, 102 D.P.R. 400, 2 P.R. Offic. Trans. 500, 504 (1974), the same Court found that the absolute responsibility found in Article 1805 means merely that "negligence does not have to be proven,

decision to deny summary judgment on this issue rests on other grounds. We are not convinced there are material uncontested facts supporting the conclusion that BJ set in motion the chain of events that led to Correa's damages.

Plaintiff's argument only subsists under the certainty that the event was triggered when PEM lost control of BJ and he ran towards Boiyaner. According to Correa, his injuries were a direct result of PEM's loss of control. PEM admits that she let go of BJ, but claims that the incident only escalated after Boiyaner's leash broke. We think this controversy is essential to the determination of whether the exculpatory fault provision applies in this case.

In *Rivera Perez v. Carlo Aymat*, 104 DPR 693, 4 P.R. Offic. Trans. 974 (1976), the Supreme Court of Puerto Rico examined the concept of fault and explained:

> When the damage has its origin in a voluntary act of the one who suffers the same the causal relationship between the owner and his animal is broken, and in such a case the

---

but in no way does it prevent the imposition of concurrent liability to the joint tort-feasor of a damage caused partly by an animal."

victim should be placed exactly at the beginning of the chain for having unfettered with his acts the sequence fixing liability. Because this case presents as dominant element in the relationship of persons the victim's consent which the evidence shows irreproachable inasmuch as it was not contrary to legal prohibition, or to the good habits, or ineffective for any reason whatsoever, the unlawfulness is excluded according to the old maxim reiterated by Puig Brutau of volenti non fit iniuria. *Id.* at 978.

Although the facts before us do not reflect a voluntary act, such as the one in *Rivera-Pérez*, the material controversies preclude us from ascertaining whether the "dominant element in the relationship" of the parties was PEM's loss of control, as plaintiff argues.

Given the controverted factual scenario on the key issue of whether BJ unleashed the sequence of events, we deny plaintiff's request for partial summary judgment in its favor.

### B. Co-defendants' Motion for Partial Summary Judgment

Estrada's request for partial summary disposition is also based on Article 1805, but focuses on another aspect: whether

the "possessor" of an animal as defined in Article 1805, is the one that has physical control of the same, or whether other factors must be considered. Only "[t]he possessor of an animal, or the one who uses the same" is liable under Article 1805. *See* P.R. Laws Ann. tit. 31, § 5144. As expressed by the Puerto Rico Supreme Court, "the basis of such liability rests on a presumption of fault for lack of vigilance" because possessing an animal requires care and supervision. *Santos v. Ramos Cobián*, 87 P.R.R. 446, 448-49 (P.R. 1963*)*(quoting *Serrano*, 79 D.P.R. at 979).

Estrada affirms that he was no longer BJ's owner when the events took place because he did not live in the same household as the dog, and was not in charge of buying him food, feeding him, bathing him, or taking him to the veterinary. Therefore, he avers, the duty of care and supervision of BJ did not fall on him.

Plaintiff objects and argues that numerous facts on the record lead to the conclusion that Estrada was BJ's owner. Estrada and Miranda bought the dog together as a present for

their daughter, PEM. Estrada paid for the dog. He registered the dog with the American Pet Registry under his name, and was listed as the owner in the Certificate of Registration and Certificate of Pedigree. Throughout BJ's life, both Estrada and Miranda were listed as "owners" or "clients" on various records of visits to veterinary clinics.

The Puerto Rico Supreme Court has examined several cases under Article 1805 where ownership of an animal was disputed. A review of the holdings and the reasoning behind them reveal that the Court accords great weight to the physical possession factor. In *Torres v. Dávila*, 47 D.P.R. 315 (1934), the defendant moved the Court to review the judgment from a lower court, holding that he was the owner of a dog that bit plaintiff's wife. Plaintiff alleged that the dog belonged to his chauffeur, and that he did not have physical possession of the same. The lower court had reasoned that even though there was evidence that the chauffeur had received the dog as a gift, the dog was constantly seen at defendant's house and, therefore, defendant had physical

control and possession of the animal. *Id*. at 1. Furthermore, the Court concluded that defendant would not have tolerated the animal's frequent presence at his house if he was not, in fact, his possessor within the meaning of Article 1805. The P.R. Supreme Court agreed with the lower court's assessment.

A few years later, in *Osorio v. Taboada*, 52 D.P.R. 806 (1938), the PR Supreme Court had to decide whether the owner of the dog that attacked plaintiffs was the entity that owned the property where the dog lived, or the defendant, who worked on the property and was perceived by the community as the dog's owner. The Court held that it was not necessary to prove that the dog belonged to the entity, it sufficed to show that defendant was in possession and dominion ("posesión y dominio") of the property, as well as the dog. *Id*. at pg. 4.

In *Galarza v. G. Llinás & Co.*, 71 D.P.R. 111 (1950), the PR Supreme Court reiterated the importance of the "possession" component in establishing ownership of an animal in Article

1805 cases. When analyzing whether an ox belonged to a company or to one of the company's alleged partners, the Court focused on "who had immediate possession [of the ox] *on the day* that the accident occurred." *Id*. at 115. (Emphasis supplied).

After conducting our review, we can safely conclude that physical control of the animal is the predominant factor in defining ownership in Puerto Rico Supreme Court decisions dealing with Article 1805 liability. This element surpassed other criteria for ownership, such as who owns the premises where the animal is kept, (*Osorio*, 52 D.P.R. at 4), who paid for the medical care of the parties injured by the animal, (*Torres*, 47 D.P.R. at 1), or even who is perceived to be the owner, (*Id*.).

Guided by this legal framework, we can only conclude that Mr. Estrada has submitted evidence that would permit a reasonable jury to conclude that he was not the immediate possessor of BJ when the events occurred. Estrada no longer

resided in the Vistas de Río Grande house, he was not in charge of taking care of BJ, and, therefore, he cannot be considered BJ's owner for purposes of Article 1805 liability. For this reason, we grant Estrada's motion for partial summary judgment.

### IV. Conclusion

For the reasons stated herein, we grant Estrada's Motion for Partial Summary Judgment at Docket No. 67-1, and deny Correa's Motion for Partial Summary Judgment at Docket No. 55.

IT IS SO ORDERED AND ADJUDGED.

In San Juan, Puerto Rico, this 30th day of September, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE